IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE MARTIN *et al*, ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> CITY OF NEW YORK, NEW YORK ) <br> ) <br> Defendant. ) <br> ) <br> ) | **SETTLEMENT AGREEMENT** <br> **14 Civ. 8950 (TPG)(AJP)** |

### SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and among the Plaintiffs in the above-captioned case, who are identified on Exhibit A attached hereto, and who are all persons who have timely consented to be party Plaintiffs in the above-captioned case, and Defendant City of New York on behalf of itself and all other New York City departments, commissions, agencies, related entities, predecessors, successors, trustees, officers, directors and employees, agents, employee benefit plans and the trustees, administrators, and fiduciaries of such plans (hereinafter collectively referred to as "Defendant"), and is based on the following:

### I. RECITALS

1.1 Plaintiffs are 542 individuals employed or formerly employed by the Defendant in the Department of Homeless Services. On November 10, 2014, and on various dates thereafter, Plaintiffs filed their consents with this Court in the case *Martin, et al. v. City of New York, et al.*, 14 CV 8950 (the "Lawsuit"). Exhibit A contains the dates on which Plaintiffs filed their consents with this Court.

1.2 Plaintiffs have made certain allegations and accusations concerning their employment with the Defendant regarding an asserted failure to pay overtime compensation

properly under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* (hereinafter referred to as the "Released Claims").

1.3    Plaintiffs and Defendant (hereinafter collectively referred to as the "Parties") have agreed to settle the matters in dispute between and among them pursuant to the terms of this Agreement. Specifically, the Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of the Plaintiffs' claims with prejudice. The Parties have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests.

1.4    The Parties, through their counsel, hereby seek judicial approval of this Settlement Agreement. In the event the proposed settlement contained in this Agreement does not become effective in accordance with the terms hereof, is not finally approved, is terminated, cancelled or fails to become effective for any reason, this Agreement will no longer have any effect and the parties will revert to their respective positions as of the date and time immediately prior to the execution of this Agreement.

## II.    PAYMENT AND DISTRIBUTION

2.1    In consideration for the terms, conditions and promises in this Agreement, Defendant shall, in accordance with paragraphs 2.2, 2.3 and 2.4, pay or will cause to be paid to Eligible Plaintiffs $1,982,000 plus 4,018 hours of Fair Labor Standards Act (FLSA) compensatory time, as described below, less any deductions made from an individual Plaintiff's amounts for any liens, judgments or wage garnishments against that particular Plaintiff, with such deductions to be made from the amounts paid as liquidated damages, to resolve all claims for FLSA damages allegedly accruing for the period from November 10, 2011, through the date that the Court enters an Order finally approving this Agreement ("the Settlement Amount"). The Settlement Amount will be divided and distributed to Eligible Plaintiffs as follows: (1) one check payable to Plaintiffs' counsel for distribution to the plaintiffs constituting liquidated damages in the amount of $1,082,000 less any deductions made from individual plaintiff's amounts for liens, judgments or wage garnishments against those Plaintiffs ("the Liquidated Damages Amount"); and (2) a set of

payroll checks and/or stubs for direct deposit payments, regular payroll checks for active (employed) Eligible Plaintiffs, and separate payroll checks for inactive (no longer employed) Eligible Plaintiffs made payable to each Eligible Plaintiff in accordance with the Plaintiffs' counsel's instructions constituting his or her share of the backpay award in the total amount of $900,000, less all applicable deductions and withholdings and any wage garnishments against that individual Plaintiff. In addition, all active (employed) Eligible Plaintiffs are eligible to receive FLSA compensatory time. The individual amount of backpay, liquidated damages and compensatory time, if any, are to be calculated pursuant to the formulae set forth in paragraph 2.7. Before the fairness hearing referenced in paragraph 8.1 below, each individual plaintiff's amount will be presented to the Court as an attachment to this settlement agreement as Exhibits B and C. These amounts are agreed to among the Parties to compromise, settle and satisfy the Released Claims and liquidated damages related to the Released Claims.

      2.2     Within one (1) day of the date that the Court enters an Order finally approving this Agreement, the Plaintiffs shall tender, by overnight mail, e-mail attachment or hand-delivery, to Defendant's attorney, the following documents to effectuate payment of the settlement amounts referenced in paragraph 2.1: a listing of the distribution amounts to each individual Plaintiff along with each Plaintiff's social security number and current addresses for plaintiffs who are no longer employed by Defendant. Defendant shall issue payment by distributing the backpay amounts (not liquidated damages) in regular payroll checks or direct deposit payments directly to active Eligible Plaintiffs and distributing separate payroll checks for non-active Eligible Plaintiffs to Plaintiffs' counsel, the amounts as specified in paragraph 2.1 for backpay and by providing by check to Plaintiffs' law firm, Woodley & McGillivary LLP, the liquidated damages amount for all of the Plaintiffs as specified in paragraph 2.1. In the event that a Plaintiff's backpay amount or liquidated damages amount will be reduced as the result of wage garnishment, lien or judgment (to the extent set forth in paragraph 2.1), Defendant's counsel shall provide Plaintiffs' counsel with: (1) the name of the Eligible Plaintiff; and (2) the amount of the reduction and the nature of the reduction at or before the time the payment is made by Defendant. In accordance with NY CPLR

§ 5003, the Settlement Amount will be paid within 90 days of the date that the Court enters an Order finally approving this Agreement.

2.3 "Eligible Plaintiffs" is defined as all Plaintiffs identified on Exhibit A.

2.4 Within 90 days of the date that the Court enters an Order finally approving this Agreement, Defendant shall credit each plaintiff with FLSA compensatory time in the amounts of FLSA compensatory time set forth in Exhibit C, which total 4018 hours of FLSA compensatory time. Defendant shall notify Plaintiff's counsel within 10 days prior to the date that such compensatory time has been credited to the Plaintiffs and verify that the amounts set forth in Exhibit B have been credited to each Plaintiff. The parties understand the term "FLSA compensatory time" to mean that the hours of FLSA compensatory time to be credited to each plaintiff as set forth in Exhibit B are hours that have all of the rights and protections regarding use, maintenance and cashing out as any compensatory time provided under 29 U.S.C. § 207(o) and the Department of Labor's implementing regulations at 29 C.F.R. §§ 553.230-233. Plaintiffs may enforce and are entitled to those rights with respect to the hours of FLSA compensatory time set forth in Exhibit B regardless of defendant's treatment of those Plaintiffs as FLSA non-exempt or FLSA exempt.

2.5 Defendant's counsel will forward the Liquidated Damages Amount, payable to Woodley & McGillivary LLP as Plaintiffs' counsel, who will be responsible for distributing to each Eligible Plaintiff listed on Exhibit A his/her respective share of the Liquidated Damages Amount in accordance with the Consent/Retainer Agreement previously executed by each of the Eligible Plaintiffs and in accordance with the formula described in paragraph 2.7 below. Defendant will send directly to each active (employed) Eligible Plaintiff a backpay amount as part of the active Eligible Plaintiff's regular payroll check. Defendant will make a good faith effort to notify Plaintiffs' counsel, at least 14 calendar days prior to distribution of the backpay amount, of the exact date when each active (employed) Eligible Plaintiff will be paid. Defendant also will make good faith efforts to send to Plaintiffs' counsel, at least 3 calendar days prior to distribution of the backpay amount, a payroll report stating the amount to which each active (employed)

4

Eligible Plaintiff will be paid, including deductions. Defendant's counsel will also send to Plaintiffs' counsel each non-active (non-employed) Plaintiff's individual backpay checks for distribution to the Plaintiffs along with a corresponding document identifying all deductions and withholdings.

2.6 The Defendant shall pay Plaintiffs' reasonable attorneys' fees and costs. The parties are negotiating a resolution of the amount of Plaintiffs' claim for attorneys' fees and expenses. Plaintiffs will provide Defendant with a copy of their contemporaneous records documenting their fees and costs to assist the parties in attempting to resolve the amount of reasonable attorneys' fees and costs that the City of New York will agree to pay. In the event agreement is reached on fees, each law firm of Plaintiffs' counsel shall execute a release and complete a Substitute W-9 form in the amount of their attorneys' fees once agreed to by the Parties. Plaintiffs' counsel shall deliver such W-9 form as well as a release to Defendant's counsel. In the event an agreement is reached, Defendant shall provide Plaintiffs' counsel with a separate check payable to each law firm - Woodley & McGillivary LLP and Spivak & Lipton LLP - in the amounts agreed upon within 90 days of the date the parties reach an agreement and execute a stipulation for attorneys' fees and costs. In the event that the parties are unable to reach agreement, Plaintiffs will submit a fee application within 60 days of the Court's Order approving this Agreement to which Defendant may respond within 30 days and Plaintiffs may reply within 14 days of defendant's response. The Court shall retain jurisdiction of this matter for the purpose of determining any application for fees and costs made by Plaintiffs. Except as modified in this paragraph, nothing in this stipulation waives or releases Plaintiffs' right to reasonable attorneys' fees and costs.

2.7 The amounts to be paid each Eligible Plaintiff were determined as follows. For purposes of computing damages "the relevant recovery period" for calculating each individual Plaintiff's point totals will be three years prior to the date when the Plaintiff's consent to join this action was filed with the Court up to October 31, 2015. Each Plaintiff received one point for each week during "the relevant recovery period" that the Plaintiff was employed by the Department of

Homeless Services in one of the following positions Community Coordinator, Community Associate, Community Assistant, Fraud Investigator, Associate Fraud Investigator, Caseworker, Addiction Counselor, Supervisor I/II (except supervisory positions categorized as "social work" positions), Assistant Superintendent of Welfare, and/or Superintendent of Adult Institutions. In addition, the Plaintiffs who were deposed and those plaintiffs who served on the plaintiffs' settlement team will each receive $1,250 as an incentive payment, which is a total of 9 plaintiffs for a total of $11,250.[1] The total number of points for all Plaintiffs were then divided into the amount of $1,982,000 plus the 4,018 hours of compensatory time valued at each Plaintiff's rate of pay in the most recent pay data provided by defendant (May or August of 2015) for each plaintiff currently employed, but at increments of quarter hours, minus the $11,250 in incentive payments. Plaintiffs and their counsel will be solely responsible for determining the allocations among Eligible Plaintiffs and the distribution of funds.

2.8     Plaintiffs and their counsel, Woodley & McGillivary LLP and Spivak & Lipton LLP, will defend, release, and hold Defendant harmless from any and all claims or causes of action arising from the distribution of settlement funds.

2.9     Defendant shall distribute W-2 forms to the Eligible Plaintiffs reflecting the backpay payments made under Paragraphs 2.1 and 2.2 in this agreement. Plaintiffs' counsel shall distribute to each Eligible Plaintiff receiving a liquidated damages award a Miscellaneous Income Form 1099 reflecting the amount paid to the Eligible Plaintiff as liquidated damages. Each Eligible Plaintiff agrees that he or she will be responsible for his or her individual tax liability associated with the payments made to him or her under this agreement. Provided Defendant timely and properly prepares and submits the necessary W-2 tax forms, Eligible Plaintiffs and Plaintiffs' counsel agree that they shall indemnify and hold harmless Defendant in the event of any dispute concerning whether taxes are owed by any Eligible Plaintiff on any part of the settlement.

---

[1] The plaintiffs who served on the settlement team are Suzette Coles, Steve Martin, Adekunle Adesina, Courtney Buckley, and Jean Jeudy. Plaintiffs Suzette Holder
Veronica Simmons, Victor Matos, and Camille Pierre were deposed.

2.10    All payments to Eligible Plaintiffs shall be deemed to be paid solely in the year in which such payments are actually received by Eligible Plaintiffs. It is expressly understood and agreed that the receipt of such Settlement Payments will not entitle any Eligible Plaintiff to additional compensation or benefits under any bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Agreement, nor will it entitle any Eligible Plaintiff to any increased retirement or matching benefits, or deferred compensation benefits. It is also expressly understood and agreed that no pension contributions shall be taken from the back pay payments. It is the intent of this Agreement that the settlement payments provided for in this Agreement are the sole payments to be made to the Eligible Plaintiffs, and that the Eligible Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received payment pursuant to this Agreement (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the time period beginning three (3) years prior to the filing date of each Eligible Plaintiff's Consent to Sue form through the date settlement is fully executed). Plaintiffs specifically waive entitlement to such benefits and in additional consideration for the mutual covenants made in this Agreement, hereby agree not to bring any further action against Defendant or any retirement or welfare benefit plan maintained by Defendant or any of its affiliates for additional benefits as a result of any additional compensation paid as a result of this Agreement. This Agreement may be used by the Defendant or by any benefit plan or fiduciary thereof as a complete and absolute defense to any such claim.

## III.   RELEASE AND COVENANT NOT TO SUE

3.1    All Eligible Plaintiffs for themselves, and their spouses and families, attorneys (if any), agents, executors, administrators, personal representatives, heirs, successors, any future estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasers"), voluntarily and with the advice of counsel, fully and forever release, acquit, and discharge the Defendant, its present or former officers, directors, subsidiaries, affiliates, partners, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs,

7

successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from all overtime claims asserted in the Lawsuit arising up to and through the date that the Court enters an Order finally approving this Agreement for the time period Eligible Plaintiffs worked at DHS in the positions identified in paragraph 2.7 above.

    3.2    All Eligible Plaintiffs shall be deemed to and shall have waived, released, discharged and dismissed all released claims as set forth in Paragraph 3.1 above, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.

    3.3    All Eligible Plaintiffs understand and agree that to the fullest extent permitted by law, they are precluded from filing or pursuing any legal claim or action of any kind against any entity at any time in the future, or with any federal, state or municipal court, tribunal or other authority arising out of the Released Claims for the time period beginning three (3) years prior to the filing date of each Eligible Plaintiff's Consent to Sue form through the date that the Court enters an Order finally approving this Agreement. They agree not to file or pursue any such claim or action for the Released Claims. Excluded from this release and covenant not to sue is any right or claim that cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by government agencies. All Eligible Plaintiffs are waiving, however, any right to monetary recovery should any agency pursue any claims on their behalf with respect to the Released Claims for the time period beginning three (3) years prior to the filing date of each Plaintiff's Consent to Sue form the date that the Court enters an Order finally approving this Agreement.

    3.4    All Eligible Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance; each Eligible Plaintiff affirms that he/she has not been coerced, threatened, or intimidated into agreeing to the terms of this Agreement; and he/she has been advised to consult with an attorney.

### IV. DISMISSAL OF CLAIMS

4.1   Eligible Plaintiffs agree to dismissal of all claims asserted in the Lawsuit against Defendant as specified in paragraph 3.1, with prejudice in accordance with the attached Agreed Order of Dismissal with Prejudice.

### V. NO ADMISSION OF LIABILITY

5.1   Defendant does not admit any allegations made against them in any charges, complaints, grievances or Lawsuits currently pending between the Parties. Nothing contained in this Agreement shall be deemed an admission of liability or of any violation of any applicable law, rule, regulation, order or contract of any kind.

### VI. RETALIATION

6.1   The Defendant agrees not to retaliate against nor take any action against any Plaintiff employed by the Defendant for pursuing claims in this action, providing testimony in this action, or for otherwise participating in the lawsuits.

### VII. CONTINUED JURISDICTION

7.1   The U.S. District Court for the Southern District of New York shall have continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement, and to hear and adjudicate any dispute or litigation arising from this Agreement or the issues of law and facts asserted in or related to the instant actions.

### VIII. PARTIES' AUTHORITY

8.1   The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the parties hereto to the terms and conditions hereof. The parties acknowledge that the Court will schedule a fairness hearing in this matter before the Honorable Judge Thomas P. Griesa. This settlement agreement will take effect provided that ninety percent (90%) or more of the Plaintiffs approve the settlement agreement. To object to a settlement, a plaintiff must either appear in person at the fairness hearing to voice their objection or, in the alternative, must contact the Court, in writing, to voice their objection and to explain all reasons for the objection.

8.2    All of the parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

### IX.    MUTUAL FULL COOPERATION

9.1    The parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

### X.    ENFORCEMENT ACTIONS

10.1    In the event that one or more of the parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or parties to enforce the provisions of this Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

### XI.    MODIFICATION

11.1    This Agreement and its attachment may not be changed, altered, or modified, except in writing and signed by the parties hereto, and approved by the Court.

### XII.    ENTIRE AGREEMENT

12.1    This Agreement and its attachment constitute the entire agreement between the parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other settlement-related document, the parties intend that this Agreement shall be controlling.

### XIII.    CHOICE OF LAW/JURISDICTION

13.1    This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, both in its procedural and

substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Southern District of New York. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

### XIV. VOIDING THE AGREEMENT

14.1  In the event this Agreement, or any amended version agreed upon by the parties does not obtain judicial approval for any reason, or that fewer than ninety percent (90%) of the Plaintiffs fail to approve the settlement, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all parties.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

WOODLEY & McGILLIVARY LLP
1101 Vermont Street N.W., Suite 1000
Washington, D.C. 20005
(202) 833-8855

By: _____
Gregory K. McGillivary (GM 0280)

SPIVAK & LIPTON LLP 1700 Broadway
Suite 2100
New York, N.Y 10019
Phone: (212) 765-2100

By: _____
Hope Pordy (HP 6253)

Dated: _November 20_, 2015

ATTORNEYS FOR PLAINTIFFS

CORPORATION COUNSEL OF
CITY OF NEW YORK
100 Church Street, Rm. 2-104
New York, New York 10007
(212) 356-4015

By: _____
Andrea O'Connor

Dated: _November 20_, 2015

ATTORNEYS FOR DEFENDANT